

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

SHARON M. PARSON (Crusoe) )
)
     *Plaintiff,* )
)
v. )
)
)
)
DEPT. *of* SOCIAL SECURITY ADM. )
THE COMMISSIONER *thereof,* )
UNKNOWN EMPLOYEES )
)
     *Defendant* )

NO: **15CV5403**
MOTION FOR JUDGMENT ON PLEADING

**16CV5403**

JUDGE SHARON JOHNSON COLEMEN
MAGISTRATE JUDGE ROWLAND

## MOTIONS FOR JUDGMENT ON PLEADING

*" THE SIXTH BASIS, A 2-615 MOTION FOR JUDGMENT. ON THE PLEADINGS, IS ANOTHER EXCEPTION TO THE GENERAL RULE OF FILING A PRE-ANSWER 2-615 MOTION. A motion for judgment on the pleadings is generally made after the issues have been settled by the pleading phase of litigation and prior to any discovery. Here the court has a right to consider both the complaint and the answer. Oak Park Nat. Bank v. Peoples Gas Light & Coke Co., 197 N.E.2d 73 (1 st Dist., 1964).*

*A motion for judgment on the pleadings may be used by either party. WHERE A COURT CAN DETERMINE THE RELATIVE RIGHTS OF THE PARTIES IN THE SUBJECT MATTER SOLELY FROM THE PLEADINGS, a motion for judgment on the pleadings is proper. Bank & Trust Co. etc. v. Arnold N. May, 413 N.E.2d 183 (2d Dist., 1980). A 2-615 motion for judgment on the pleadings REQUIRES A DETERMINATION OF WHETHER THE PLEADINGS DISCLOSE ANY MATERIAL ISSUE OF FACT and, if not, whether the moving party is entitled to judgment as matter of law. The motion does not test whether there is any evidence to support the pleadings, rather whether the pleadings present a material issue of fact. If an issue of material fact is presented, it is inappropriate to enter judgment on the pleadings. Whildin v. Kovacs, 417 N.E.2d 736 (1 st. Dist., 1981)"*

    1. In a case presented to The United States District Court of Tennessee by a Plaintiff by the name of Johnny Gant to Judge Trauger ( Magistrate Judge Bryant ) Judge Trauger in her REPORT AND RECOMMENDATION states the following:

*" In his Motion for an Emergency Injunction submitted with his complaint " "The Plaintiff requested an Injunction to all parties involved..... to preclude ( [ his eviction ] ) until Resolution of this case " " The Plaintiff also seeks reinstatement ( [of his Section 8 ] )"* ( Gant v State of Tennessee; Metropolitan Development Housing Agency )

    2. The Plaintiff, in her initial papers to this court, neglected to name ONE person in the Department of Social Security, It's Commissioner and it's applicable Employees by their rightful name due to the fact of her inability to remember due to the fact that plaintiff had spoken to so many employees (a) in person (b) by telephone and (c) by email or the names of employees were

not listed on documents received. However, though not listed, the Plaintiff was also aware of the Rule which states that the OFFICIALS name(s) need not be present if:

" *The United States may be names as a Defendant in any such action and a judgment or decree may be entered against The United States provided that any mandatory or injunctive decree specify the federal officer or official by Name - OR- by Title* " see also; Bivens v Six Unknown Named Agents 403 U.S. 388, 397 (1971)

3. The Plaintiff in the case before this court, upon review, by the Plaintiff her and acting in Pre Se, realized that she, Sharon M. Parson ( Crusoe ), in her filing have comes short in many instances with regard to the PROPER APPLICATION of Legal Titles. Such as: The Administrative Procedure Acts 5 USC 703 (§§ 551-559) One such instance is the fact that the Pleading, lays out a case based upon two such Causes of Action, by which both fall beneath The Federal Torts Claims Acts; Administrative Procedure Act and The Tucker Act.

" *The Federal Rules do not favor ex parte TROs, as they are contrary to the adversarial system of justice. Unless you believe in good faith that notifying the opposing party will cause it to harm your client, try first to negotiate a settlement with the opposing party. Rule 65(b)(1)(B) requires an attempt to give notice and, in exercising its equitable authority, the court will want to know that you have attempted to resolve matters without taking valuable court time on an emergency basis........* " ..... *If a temporary settlement is not feasible, or is too time-consuming, call the court clerk's office or district judge's chambers, depending on who does scheduling in your district, and request a hearing time. As soon as you schedule a hearing, notify opposing counsel or parties by phone, followed by a confirming letter. Review all of your documents at this point to make sure they are in order, and, in particular, check your proposed order to see that it contains the detail required by Rule 65(d).*

*Although TRO hearings are often held in chambers and without evidence, be prepared to present witnesses to prove your need for a TRO. Whether or not you are in chambers, presentation of the facts is crucial. Of the elements for a TRO, proof of imminent irreparable injury is the most important. In litigation over public benefits, the client's loss of a social welfare benefit can be irreparable injury.33 At a hearing on a motion for preliminary injunction, you should also be prepared to present live testimony, although your motion papers will present the relevant facts through declarations. The witnesses should be present even if the practice of the court is not to take such testimony. Many judges conduct a "mini-trial" on a preliminary injunction. Therefore, be prepared to present a compelling and sympathetic case that the client has been or will be imminently and irreparably harmed by the defendant's unlawful conduct if preliminary relief is not granted, and will likely prevail on the merits.*

*Plaintiff must show that preliminary relief will not harm the defendant or that such harm is outweighed by the harm to the plaintiff from denying preliminary relief. In some cases, the plaintiff should be prepared to subpoena and examine the defendant. Although presenting a case only through the client and favorable witnesses is better, having the welfare administrator, housing bureaucrat, or correctional worker before the court not only increases the likelihood that the court will hear testimony, but also ensures that the court can, in fact, enter preliminary relief in the presence of the opposing party.*

*Rule 65(a)(2) ALLOWS FOR THE CONSOLIDATION OF THE PRELIMINARY INJUNCTION HEARING WITH THE TRIAL ON THE MERITS"*

1.  THE LIKELIHOOD OF IRREPARABLE HARM TO THE PLAINTIFF IF THE EXPEDITED EMERGENCY INJUNCTION AND A HEARING FOR PREMINARY INJUNCTION IS DENIED;

    A.  FACTORS THAT COMPEL THE ENTRY OF THE EXPEDITED EMERGENCY INJUNCTION AND A HEARING FOR PREMINARY INJUNCTION has been demonstrated by the fact that plaintiff exhausted all possible procedures for a cure or potential remedy(s). And that the Plaintiff even, *tittered on the edge* of hounding employees of the Downtown Office of The Dept. of Social Security that could have easily boarded the lines of Harassment. Both the plaintiff and the staff members of The Department of Social Security were left in *awe* in their respective positions of the plaintiffs' requests, which had been effectively denied.

    *5 U.S.C. §§ 551-559*

The Administrative Procedure Act *(APA) governs internal procedures of administrative agencies, including how they interact with the public.* Administrative Law Procedure *(1)* " *the exhaustion of administrative remedies provides that no one is entitled to* JUDICIAL RELIEF FOR A SUPPOSED OR THREATENED INJURY UNTIL THE PRESCRIBED STATUTORY ADMINISTRATIVE REMEDY HAD BEEN EXHAUSTED " *(2)* BASIC RULE OF ADMINISTRATIVE PROCEDURES REQUIRES THAT AN AGENCY BE GIVEN THE OPPORTUNITY TO ADDRESS A QUESTION BEFORE A COMPLAINT RESORTS TO THE COURTS(3) THE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES ARE GROUNDS FOR DISMISSED A COURT ACTION. *(4) Exhaustion of Administrative Remedy is not required where no Genuine Opportunity to Adequate Relief exist or irreparable harm injury will result. (5) until a litigant pursues the Administrative process to its end there cannot be said that it is futile to exhaust those remedies before filing suit (6) Inadequate or Futile Administrative procedure need not be exhausted before other remedies are pursued. 203 S W 2d 94 ( 2005)*

B.  FACTORS THAT COMPEL THE ENTRY OF THE EXPEDITED EMERGENCY INJUNCTION AND A HEARING FOR PREMINARY INJUNCTION has been demonstrated by the fact that plaintiff questioned her own alternative motives, and calmed all doubts about Not exhausting based upon The Department of Social Security's Own Requirements, In applying the Following Questions. And answering those Questions by Applying the Department of Social Security's Own Answers to those questions on a *step by step basis* – as offered through it's website portal to find that no other alternative remained:

1.  **WHO CAN REQUEST A RECONSIDERATION ?** "The Claimant, his or her appointed representative or representative payee may e,g, letter, facsimile, email, or submission of additional evidence request for reconsideration. The Technician must provide a copy of the SSA received the Appeal"

2. **WHAT CONSTITUTES a RECONSIDERATION REQUEST?** "A Request for reconsideration can be expressed or implied; however, it must be in writing. (i501 Internet Request for Hearing by Administrative Law Judge ( *iAppeals (i561 (Internet Request for Administrative Law Judge) and i3441 ( Internet Disability Report Appeal)see GN 03970.010B ) "*

## 3. WHAT CONSTITUTES A REQUEST HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE ?

4. **WHO CAN REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE APPROPRIATE?** § 404.946 states " Issues before an Administrative Law Judge. (a) *General.* The issues before the administrative law judge include all the issues brought OUT IN THE INITIAL, RECONSIDERED or revised determination that were not decided entirely in your favor. (B) NEW ISSUES—(1) *General.* The administrative law judge may consider a new issue at the hearing if he or she notifies you and all the parties about the new issue any time after receiving the hearing request and before mailing notice of the hearing decision. However, it may not be raised if it involves a claim that is within the jurisdiction of a State agency under a Federal-State agreement concerning the determination of disability. (2) *Notice of a new issue.* The administrative law judge shall notify you and any other party if he or she will consider any new issue. Notice of the time and place of the hearing on any new issues will be given in the manner described in § 404.938, unless you have indicated in writing that you do not wish to receive the notice. *[45 FR 52081, Aug. 5, 1980, as amended at 51 FR 303, Jan. 3, 1986]*

## 5. WHAT ACTS CONSTITUTE THE APPLICATION OF AN ADMINISTRATIVE REQUEST?
According to 20 CRF 404.901 404.907,-404.922,416.1401 416.1407-416.1413b 416.1414-146.1422 states "Administrative actions that are not initial determinations may be reviewed by us, but they are not subject to the administrative review process provided by this subpart, and they are not subject to judicial review. These actions include, but are not limited to, an action - (E) WITHHOLDING LESS THAN THE FULL AMOUNT OF YOUR MONTHLY BENEFIT TO RECOVER AN OVERPAYMENT; *and* (K) DENYING YOUR REQUEST TO USE THE EXPEDITED APPEALS PROCESS; (l) Denying your request to reopen a determination or a decision"

C. FACTORS THAT COMPEL  THE ENTRY OF THE EXPEDITED EMERGENCY INJUNCTION AND A HEARING FOR PREMINARY INJUNCTION Defendants of The Dept. of Social Security and Commissioner thereof, and the designated employees who worked on the Plaintiff case – All are in a better position to answer the questions in a *Res Ipsa Loquitor Request,* as to why, These Requests ( Reconsideration **(EXHIBIT A-1)** and  Hearing before a Administrative Law Judge   - On two separate occasions ) were merely looked over, hence, a Constructive Denied without Written Correspondence and held within files and computer system( as is *protocol* ).    Therefore, this request for a *Res Ipsa Loquitor* response is appropriate due to the fact that Department's designated Employees *refused* to offer, *lost*  or *misplaced* any response relating to the denial of such requests. This is evident in light of the fact that the changes requested, even by subpoena, never arouse. And Of the twenty-five (25 ) or more *correspondence* between the plaintiff and the defendant, have never referred to the request  or to an anecdote for the original request;  To establish (1) Status Quo  (2) Income of  $933.00 be continued until a review and or hearing could be completed. In the

alternative, At some point, corrected the Differentiations of the amounts, stabilizing the income of the Plaintiff back to $933.00.

## RIGHT TO RESPONSE FROM DEPT. OF SOCIAL SECURITY OFFICE

*" Parkway served them with a request to admit facts. In summary, the facts included a request related to the authenticity of the copies..... "Under Illinois Supreme Court Rule 216 (Ill. S. Ct. R. 216 (eff. Jan. 1, 2011)), defendants' answers to the request were due 28 days later, or September 13, 2011" "Their belated attempt for an extension of time was never granted, but even so, it is not dispositive .... " "Rule 216(g), which became effective January 1, 2011, and requires that requests to admit facts contain an admonition in a prominent place on the first page in 12-point or larger boldface type stating: "WARNING: If you fail to serve the response required by Rule 216 within 28 days after you are served with this paper, all the facts set forth in the requests will be deemed true and all the documents described in the requests will be deemed genuine." Ill. S. Ct. R.*

## AS OFFERED IN REQUEST FOR
## DEFAULT JUDGEMENT

*"Rule 65(b)(1)(B) requires an attempt to give notice and, in exercising its equitable authority, the court will want to know that you have attempted to resolve matters without taking valuable court time on an emergency basis"*

3.) Defendants, in their own rules and regulations makes clear in it's intent to give *"benefit holders"* notice and the ability to be heard as emphasized in the case of Lincoln v Vigil 508 U S 182 ( 1993 pg 196) *" In matters relating to benefits.. the secretary of Health and Human Services has determined, as a matter of policy to abide by the APA's Notice and Comments Requirements "* ( Rule Making Provision of APA 5 USC ss 553 Notice and Comments Requirements)

*" Your Right To Appeal " " if you still are not satisfied with the decision, you may request a hearing of this decision by the office of hearings and appeals.* **YOU MUST REQUEST THE HEARING IN WRITING WITHIN 60 DAYS FROM THE DATE YOU REVIEVE THIS NOTICE.** *If you cannot send us a written request for a hearing within 60 days, be sure to contact us by phone. If you wait longer than 60 days, we will not conduct a hearing review of our decision unless you have a good reason for the delay " Howard v Afel ( 17 F Supp 955 ( 1998) W.D. Mo.)*

4.) It is further supported in the case of Howard v Apfel in an exacting lyrical manner as it explains that a reconsideration is a simple process which allows another staff member of The Department of Social Security to review, a coworkers decisions ( as a second opinion of Doctors) nothing unreasonably hard. Just another opinion. In The United States Court System, make clear, *" If one judge could rule come and to a different opinion "* In the level of the courts, it is common knowledge, that an individual my proceed to the next level of jurisdiction if he or she does not agree with the decision of the lower court. Even at this stage, Judges, can come to different opinions on the very same issues before them in the same proceedings.

" **The Social Security Act** and implementing regulations provide a Four Step Process " "*To Facilitate the orderly and sympathetic administration of the disability program of Title II, **The Secretary and Congress have established an "underlined protective" four-step process** for the "review and adjudication" of disputed claims. **First**, a state agency determines whether the claimant has a disability and the date the disability began or ceased. 42 U S C ss 421(a); 20 CFR ss 404.1503 (1983). **Second**, if the claimant is dissatisfied with that determination he may request reconsideration of the determination This involves a De Novo Reconsideration of the disability claim by the state agency, and in some cases, a full evidentiary hearing ss 4040.907-404.921. additional Evidence may be submitted at this stage, either on the request of the claimant, or by order of the agency. **Third**, if the claimant receives an adverse reconsideration determination, he is entitled by statute, to an Evidentiary Hearing and to a De Novo Review by an Administrative Law Judge 42 USC ss 405(b); 20 CRF ss 404.929 – 404.983 Finally, [**The Fourth**] if the claimant is dissatisfied with the decision of the ALJ , he may take an Appeal to the Appeals Council of the Department of Health and Human Services ss 404.967-404.983. THESE FOUR STEPS EXHAUST THE CLAIMANTS ADMINISTRATIVE REMEDIES, therefore* HE MAY SEEK JUDICIAL REVIEW in FEDERAL DISTRICT COURT. ( Heckler, Secretary of Health and Human Services v Day et al. 467 U S 104)

6.)    This opinion written was one Guaranteed not only by the Constitution, which in many instances, seem to be so far away from the common, everyday worker, but in their; employees of The Dept. Of Social Security rule guidelines and for which they flatly refused to apply. Not on one occasion did this violation occurred, but various occasions and at various different offices of the same Official Department of the United States Government which makes it an overwhelming degree of public concern and possibly ongoing violation.

7.)    Defendants have further failed to give Response of any form, even in the face of possible admonishment to the Plaintiff's applications for Reconsideration and a Request to go before an Administrative Law Judge. This also, was a Violation of United States Constitutions' Due Process Clause and of their own guidelines. Exacting and concise; all it's requirements are demonstrated in this one case; Heckler v Day.

8.)    In an Similarly Situated application and a commonality of the case before the judge, the implementation of The Social Security Act was demonstrated to the fullest extent in the case of Howard v Apfel. Where at each Application submitted, the claimant of the case of Sue Howard v Kenneth Apfel, The Commissioner of Dept. of Social Security was presented and secured an opportunity to utilize every level of the stated act [ The Social Security Act ] time and time again. At each and every interval, starting at the Request for Reconsideration stage to the actual Reconsideration to the request to go before an Administrative Law Judge and setting a Hearing Date was allowed. The applicant Sue Howard, unlike the case before this court, was given 80% of the prescribed opportunities to defend her belief(s) in a legal

arena. Once more, something the Plaintiff in Sharon Parson v Dept. of Social Security Administration, The Commissioner thereof and Un-Named employees was continuously denied, verbally and without just cause, hence judging the Plaintiff's requests as *Res Judicata.*

9.) The Similarly Situated, Sue Howard applied for, was heard, a decision made and a Notice was attached just beneath the reason for denial which stated specially

" *Your Right To Appeal* " " *if you still are not satisfied with the decision, you may request a hearing of this decision by the office of hearings and appeals. YOU MUST REUEST THE HEARING IN WRITING WITHIN 60 DAYS FROM THE DATE YOU REVIEVE THIS NOTICE. If you cannot send us a written request for a hearing within 60 days, be sure to contact us by phone. If you wait longer than 60 days, we will not conduct a hearing review of our decision unless you have a good reason for the delay* " *Howard v Afel ( 17 F Supp 955 ( 1998) W.D. Mo.)*

10.) So important was this particular statement to the case, it was reiterated twice, but referred to in some shape, form or fashion. Administrative Law Judge; Request for Reconsideration, on every page of the cases, seventeen pages and offered in well over 100 paragraphs of those seventeen pages. Further was the impressions of importance, based on the importance of and something the Plaintiff knew of - *Denial Letter.*

11.) The Absence of a Denial Letter on this issues pursued for in the Plaintiffs request for a Reconsideration and that of a Hearing before an Administrative Law Judge, is clear and convincing evidence of *Benign Indifference is an act of Benign Injustice*. Plaintiffs believes based upon all all, acts

in the aggregate, amounted to Willful, Wanton and Malicious, inflicting of distress upon the Plaintiff's ego and emotional disposition, by effectively countering Plaintiffs request with what would be deemed a Strategic Suit Against Public Participation also known as a SLAPP suit, hence silencing Plaintiff's right to be heard. Although the employees actions were nothing remotely close to being clever to a Strategic Lawsuit Against Public Participation to file suit. The aforementioned acts, once completed, injured the Plaintiff's ability for a fair hearing with simplicity and ease just by brushing aside, as if a magical wand, and in doing so, waived the Plaintiff's rights, delayed the Plaintiff's rights, diminished Plaintiff's rights for a Reconsideration and A Hearing before an Administrative Law Judge. The arrogant acts and non actions, were to belittle the Plaintiff in her status as a claimant and cast off Plaintiff as ignorant to the Processes

of The Dept. of Social Security Administration the Commissioner thereof and the employees designated to serve those under it's flag, in a game of Superiority and Inferiority. The powerful verses the powerless.

12.)    More Importantly, to throw away the Plaintiff's Opportunity to "COMPLAIN " that the employee wasn't doing her job, CORRECTLY or FAIRLY. Or that she, the Plaintiff had NO RECORSE, but to accept this employees decision and walk way once more injuring the Plaintiff by Affixing a title of *Finality*.

13.)    Plaintiff had nothing personal against the employee, but only to defend her right and be heard. Clearly, without apprehension or interference. In short the Plaintiff's right to be heard; a violation of one of the most basic Constitutional Rights; Freedom of Speech addressed in the form of an Inquiry, Reconsideration, Request to go before an Administrative Law Judge.

14.)    Plaintiff in this case before, this court requested penalties as set forth effective total May 23, 2016 to June 13th **$250.00 per day** ( excluding six days to account for holidays and weekends ) Totaling **$3,500 per person** as expressed in the Plaintiff's Expedited Emergency Injunction under the title of 3-C THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS; to the court or to the Plaintiff.

" *3. C. THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS* " *Based upon The Department of Social Service's designated Employees' History of Betrayal and Neglect their Fiduciary Of Duties, a duty owed to the Plaintiff and for which the Plaintiff has had to endured, the Enforcement of the Request of the Expedited Emergency Injunction and the Hearing for a Preliminary Injunction to keep the said employees from destroying completing or further concealing evidence that Plaintiff submitted to the office for the stated proceedings. The Plaintiff should no longer be forced to endure and bear the grunt of these failure to acts by the Dept. Of Social Security and the Commissioner thereof' designated employees, thus, Plaintiff demands the court to enforce a strict penalty of $250.00 for each day and for each employee who fails to comply with this The United States District Court of Chicago's Expedited Emergency Injunction*"

## AS OFFERED IN REQUEST FOR
## EXPEDITED EMERGENCY INJUNCTION

*216(g) (eff. Jan. 1, 2011). The committee comments to amended Rule 216(g) state that, "[c]onsistent with Vision Point of Sale, Inc. v. Haas, 226 Ill. 2d 334 (2007)*

D. THE REASONABLE MAN DOCTRINE APPLIES HERE. Plaintiff states this only to say that these employees of The Department of Social Security Administration, and Commissioner thereof and it's designated employees in Tennessee *or* in Chicago (1) should have known (2) should have had resources to acquire the knowledge or (3) secured the information from a Superior that would allow, any form of Response to be given to the plaintiff as directed by the Legislature, Regulations and or Statutes laying the foundation for such rules and proceedings to follow. Instead, Defendants followed an unknown or silent to the public rule. The Defendants themselves would be in a better position to answer the questions in *Res Ipsa Loquitor Request*, even by subpoena, never arouse.

E. FACTORS THAT COMPEL THE ENTRY OF THE EXPEDITED EMERGENCY INJUNCTION AND A HEARING FOR PREMINARY INJUNCTION The Dept. of Social Security Administration and Commissioner thereof and Commissioner thereof and the Commissioner thereof, as rules that proffer for acceptable time limits for it's employees to accept submit and respond such requests as submitted by the plaintiff. Yet the plaintiff was offered no direction as to where she could respond, other than the words of the employee that it was her call to submit my application that would allow me to proceed to a Hearing for the Administrative Law Judge. We believe once more that the employee was on a *"Power Trip"*

2. E. THE LIKELIHOOD OF HARM TO THE DEFENDANT IF THE REQUESTED RELIEF IS GRANTED; IN THEIR EXPERTISE IN DEALING WITH, PERHAPS THIS CAN BE SEEN AS THE ONLY WAY TO REDUCE THE ROLLS OF THE ADMINISTRATIVE LAW JUDGE Plaintiff Sharon M Parson acting in pro se, admits on behalf of her own Mental Stigma and based upon the case that was filed ( 1997 ) in the City of St. Louis Mo. ( U.S. District Court Eastern District of Missouri ( St. Louis ) 4:97-cv-01000-TIA ) which Memorialized the incidences that faded into premature paranoid schizophrenic episodes. Though not full blown, sufficient enough to cause pause in growth. And later in attacking her dream to study law - taking fifteen years, whereas others only four " I have had to depend upon two things (a) Civil Law, more specifically – The Reasonable Man's Theory and (b)The Psychological Personality Test that I developed to keep my thinking straight ...... "

---

" *42 USC402(1)(5) " social security benefits framework provides a Safety Valve for people who do not for benefits because they are misled by employees of Social Security Administration and Commissioner thereof where it is shown to the commissioners satisfaction that a claimant missed out on a benefit after being misled by an employee. The claimant is deemed to have applied for the relevant benefits either as of the date on which the claimant was misled or the date by which he met the.... requirements "*

Neilsen-Massey Vanillas states  " *Well Pleaded Facts in the complaint and ...... [ defendant ]* <u>fails to file a</u> <u>counter – complaint, The facts set forth in the affidavit are accepted as true despite any</u> <u>contrary assertions in the plaintiff's complaint.</u>  " Neilsen-Massey Vanillas 276 Ill App 3d at 155-56 Chicago Title Trust Co.  v Weis ( 1992) 238 Ill App 3d  343, 349-50  see also  Blackwelder  " *In determining what relative emphasis to give these elements, the Blackwelder court stated:  The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree.  If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success.( Blackwelder Furniture Co., 550 F.2d at 196.  )*

BAD BUSINESS DECISION;   *"not only ignores Jacobs testimony that Mitzel was unsuited for breaking news reporting but also fails to acknowledge the oft cited admonishment that bad business decisions do not necessarily correlate with decisions that violate the law".* See Reilly v. Novartis Pharm. Corp., No. 6:07–cv–230–Orl–19GKJ, 2008 WL 795322, at *10 (M.D.Fla. Mar.24, 2008) (citing Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir.2000) (en banc)); see also Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir.1999)   *("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law . We are not in the business of adjudging whether employment decisions are prudent or fair.");* Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)   *("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [federal discrimination law] does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.").* Brundage v. Hahn (1997)  [57 Cal. App. 4th 231]

## 3. THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS;

A. FORTH GOING   THE PLAINTIFF BELIEVES, The decision of the employees of THE DEPARTMENT OF SOCIAL SERVICES, the commissioner thereof;  was not a " bad decision "  but a decision committed  was made with  " Bad Faith " *fraudulently.* Fraudulent Misrepresentations time and time again. Because the same said employees REFUSED to issue a statement in writing for the Denial, hence to take full responsibility for the decision they, quoted to have had the authority to make. But, instead,  the designated employee lacked the ability to make a decision on the issue – Constructively, overriding the Subpoena. In addition to Overriding the Subpoena , they also overrode  and replaced the Administrative Law Judge's authority and replaced that Administrative Law Judge's Authority as designated by law,  with their own. Both the decisions, *first* with elude review via Reconsideration and elude a hearing before the Administrative Law Judge. S*econdly,* to take it upon themselves, placing themselves in as an "Authority" to issues, they were Clearly not delegated nor appointed to do so and in doing so, more than once - abridged the Plaintiff's Due Process Rights.

*Without Immediate Judicial Review,  will be left with no meaningful adequate  remedy  to enforce congress' limitation in reach of Agency's Authority* ( McCorp 502 at 43 ) " *Irreparable harm  does not mean Injury that is beyond repair and beyond compensation in damages  but rather, denotes  transgressions of a continuing nature"  " A Lawful Right to irreparable Harm Adequate Remember at Law ""  " Denote Transgressions  of a Continuous Nature ""*     ( Behl  v Duffin   406  Ill App 3d  1084)

B.) THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS; ULTRA VIRES in that   ONCE THE EMPLOYEES OF THE DEPT. OF SOCIAL SECURITY ADMINISTRATIION,  SAW THE SUBPOENA should have been *estopped* from any further decision. **( Exhibit A ).** Here once more, the reasonable man says " I SHOULD HAVE

KNOWN IMMEDIATLEY " base _solely_ under the recognized power of THE UNITED STATES of APPEALS, FEDERAL COURTHOUSE, the decisions those employees contemplated, foresaw the _possibility_ of future harm, forced them to reconsider any contemplation of wrongdoing, intentionally or arbitrarily – _pause_ for doubt, as to a decision they were about to embark upon, was far beyond their prescribed scope of duties and authority. That same decisions would be the same as this requested Expedited Emergency Injunction and requested hearing of The UNITED STATES DISTRICT COURT OF CHICAGO, FEDERAL COURTHOUSE

C. THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS; Based upon The Department of Social Service's designated Employees' History of Betrayal and Neglect their Fiduciary of Duties, a duty owed to the Plaintiff and for which the plaintiff has had to endured, the Enforcement of the Request of the Expedited Emergency Injunction and the Hearing for a Preliminary Injunction to keep the said employees from destroying applicable documents or further concealing evidence that Plaintiff submitted to the office for the stated proceedings. The Plaintiff should no longer be forced to endure and bear the grunt of these _failure to acts_ by the Dept. Of Social Security and the Commissioner thereof' designated employees, thus, Plaintiff demands the court to enforce a strict penalty of $250.00 for each day and for each employee who fails to comply with this The United States District Court of Chicago's Expedited Emergency Injunction.

_Reasonable Man Doctrine. Also known as "Reasonable Man Standard." The standard which a person must adhere to in order to avoid civil liability for negligence is the standard of the reasonable man under all of the circumstances, including the foreseeability of harm to other persons, including the plaintiff https://www.edgarsnyder.com/legal-dictionary/r.html_
_Blackwelder Furniture Co " If, however, the balance is struck in favor of the defendant, the likelihood of success becomes a more significant factor. "The importance of probability of success increases as the probability of irreparable injury diminishes." Id. at 195. B. The Balance of Hardships " Blackwelder Furniture Co., 550 F.2d at 196_

3. Despite of the fact that various, 4th, (("_The Supreme Court recently made clear that the protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even if his expectation of privacy in that property has been completely extinguished._") (citing _Soldal_)); _Lenz v. Winburn_, 51 F.3d 1540, 1550 n.10 (11th Cir. 1995)). The 5th and 14th Amendments and Constitutional Laws and assigned Regulations The Social Security Act 42 UCS 402 and The Rehabilitation Act 504 of TITLE VI of the Civil Rights Act of 1964 were stated and referred to, were not NAMED with _specivity_ or named on one document; Violation of the Due Process ( 14th Amendment 42 USC (§§ 1983 ) and perhaps misapplied in another.

The Court did not only allow entry, but also, served Defendants. Though Obstruction of Administration of Justice 18 USC 1503 of the Omnibus Clause " DUE ADMINISTRATION OF JUSTICE " was mentioned, but was not a valid complaint; Convergence correctly; CONVERSION was.

## OFFERED FROM
## EXPEDITED EMERGENCY INJUNCTION

### VIOLATION OF DUE PROCESS
**14th Amendment 42 USC (§§ 1983 )**
### ULTRA VIRES DOCTRINE I

D. THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS;

an employee of any corporation or corporation of the state or otherwise, do not have the authority to Quash a Motion, such as a subpoena ( **Exhibit A),** which has been submitted to the United States Appeal, by merely sweeping it aside, brushing it under the table, or failing to acknowledge it's authority through omission.

## ACTS OF THE EMPLOYEES OF DEPT. OF SOCIAL SECURITY
## EFFECTIVELY EQUATED THE QUASH OF A SUBPOENA

**FEDERAL RULES OF CIVIL PROCEDURE** - RULE 45 . SUBPEONA. TITLE VI TRIALS (3) **QUASHING OR MODIFYING A SUBPOENA. (A)** *When Required.* On timely motion, THE COURT FOR THE DISTRICT WHERE COMPLIANCE IS REQUIRED MUST QUASH OR MODIFY A SUBPOENA THAT: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. (B) *WHEN PERMITTED. TO PROTECT A PERSON SUBJECT TO OR AFFECTED BY A SUBPOENA,* the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an un-retained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party. (C) SPECIFYING CONDITIONS AS AN ALTERNATIVE. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated. (e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) PRODUCING DOCUMENTS OR ELECTRONICALLY STORED INFORMATION. These procedures apply to producing documents or electronically stored information: (A) DOCUMENTS. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand. (B) FORM FOR PRODUCING ELECTRONICALLY STORED INFORMATION NOT SPECIFIED. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms. (C) ELECTRONICALLY STORED INFORMATION PRODUCED IN ONLY ONE FORM. The person responding need not produce the same electronically stored information in more than one form. (D) INACCESSIBLE ELECTRONICALLY STORED INFORMATION. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If

that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) CLAIMING PRIVILEGE OR PROTECTION. (A) INFORMATION WITHHELD. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. (B) INFORMATION PRODUCED. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved. (f) TRANSFERRING A SUBPOENA-RELATED MOTION. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made. (g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

*In The Matter of: GRACO Inc. states the following " 16 C.F.R. §3.31 (c)(1)(iii) ( use of subpoena and other discovery methods "shall be limited by the Administrative Law Judge"' a non-party to this proceeding, files the following Motion to Quash and/or Limit Subpoena. " " Complete moves to quash or limit the Subpoena on three main grounds. First, the Subpoena is overly broad and unduly burdensome. Second, some of the documents to be produced are confidential and proprietary and/or are considered trade secrets, and therefore should be protected from discovery, and particularly from Graco. Third, assuming even that the scope of the Subpoena was manageable, and the responsive documents not privileged, the timing of the Subpoena and the short time frame for response make compliance impossible. " 16 CRF section 3.31 see also In the Matter of: GRACO INC. Fed. R. Civ. P. 45(c)(3) (a court "shall quash or modify the subpoena if it ...requires disclosure of privileged or other protected matter ... [ or] subjects a person to undue burden") (authorizing Administrative Law Judge to "deny discovery or make any order which justice requires to protect a party or other person from annoyance, embarrassment, oppression, or undue burden or expense"); see also Fed. R. Civ. P. 26(c) (court may grant a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense). See also Murphy v. Deloitte & Touche Group Ins. Plan, 619 F. 3d 1151, 1163 (10th Cir., 2010)*

E. THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS; THE PLAINTIFF had enclosed various pieces of evidence with the RECONSIDERATION request **(EXHIBIT A-1)** and her REQUEST to go before an ADMINISTRATIVE LAW JUDGE, including The Subpoena, which has been clearly an accepted practice in Administrative Hearing before an Administrative Law Judge and of which was concealed, misfiled or destroyed, along with other pertinent evidence.

**PRESENTING EVIDENCE.HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE. § 416.1450**
*(a) **The right to appear and present evidence.** **Any party to a hearing has a right to appear before the administrative law judge**, either in person, or, when the conditions in § 416.1436(c)(1) exist, by video teleconferencing or telephone, **to present evidence and to state his or her position**. A party may also make his or her appearance by means of a designated representative, who may make the appearance in person, or, when the conditions in § 416.1436(c)(1) exist, by video teleconferencing or telephone. (C) **WHAT EVIDENCE IS ADMISSIBLE AT A HEARING. The administrative law judge - The administrative law judge may***

*receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court.*

**(D) SUBPOENAS.**

(1) When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing. **(2)** Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 5 days before the hearing date. The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena. **(3)** We will pay the cost of issuing the subpoena. **(4)** We will pay subpoenaed witnesses the same fees and mileage they would receive if they had been subpoenaed by a Federal district court( **https://www.law.cornell.edu/cfr/text/20/416.1450**)

F.    At the very Least The Subpoena ( **Exhibit A** ), seeing that the subpoena was based upon the same issues, as was officially submitted on May 20, 2014 directly to the office of Honorable Judge Truager  of  The United States District Court for The Middle District of Tennessee  at Nashville  and Chicago Office barred the use of  The Department of Social Security Administration, thereby striking it from the records, as if it never existed – then reducing Plaintiff's  income. Even  as Plaintiff continued to insist that she  was  NOT a legal resident ( 6 months as allowed by Social Security Administration ) of Nashville *should have been admitted based up it's probative value* at the very least and as stated  in the case of AUBURN WOODS HOMEOWNERS ASSOCAITION V  FEHA.  The Fair Employment and Housing Agency in it's argument against the association, makes it clear in it's statement

" *First, the statutes that Auburn Woods relies on (§§ 11425.10, subd. (a)(7), 11425.60, 12935, subd. (h)) are part of the Administrative Procedures Act and apply to state, not federal, agencies. (See § 11410.20.) These statutes serve to prohibit a California administrative agency from relying on its own non precedential decisions. Because the cases at issue here are HUD decisions under the FHA, not FEHC decisions, the statutory prohibitions cited by Auburn Woods are inapplicable. Second, nothing in the FEHC decision supports Auburn Woods' claim that the FEHC believed itself to be bound by the HUD decisions. There is nothing improper in citing these cases for their persuasive value (Duke v. Workers' Comp. Appeals Bd. (1988) 204 Cal.App.3d 455, 460, 251 Cal.Rptr. 185), and that is in fact the reason we have included these cases in our discussion as well" ((2004) 121 Cal.App.4th 1578)*

" *We may not isolate only the evidence which supports the administrative finding and disregard other relevant evidence in the record. [Citations.] On the other hand, neither we nor the trial court may disregard or overturn the Commission's finding " 'for the reason that it is considered that a contrary finding would have been equally or more reasonable.' " [Citations.] .' [Citation.] "This court must uphold the Commission's decision unless the review of the entire record shows it is so lacking in evidentiary support as to render the decision unreasonable. [Citation.] "Substantial evidence is defined as: ' "relevant evidence that a reasonable mind might accept as adequate to support a conclusion, ." " [Citation] or evidence of ' " 'ponderable legal significance . reasonable in nature, credible, and of solid value.' " ' [Citation.] "While the*

*Commission's findings on questions of fact will be sustained if supported by substantial evidence on the record considered as a whole, yet, if the Commission committed any errors of law, the trial and appellate courts perform 'essentially the same function' and are not bound by the Commission's legal conclusions." (Johnson Controls, Inc. v. Fair Employment & Housing Com. (1990) 218 Cal.App.3d 517, 531-532, 267 Cal.Rptr. 158 (Johnson Controls).) – " Auburn Woods challenges the propriety of relying on HUD decisions. In its statement of decision, the FEHC ruled that "[a]llowing a person with a disability to have a companion animal in a housing environment where no pets or dogs are permitted can constitute a form of reasonable accommodation." As support for this statement, it utilized a "see" cite to Janush, supra, 169 F.Supp.2d 1133, and the two FHA HUD decisions just discussed, HUD v. Riverbay Corporation, supra, HUDALJ 02-93-0320-1, and HUD v. Dutra, supra, HUDALJ 09-93-1753-8. On appeal, Auburn Woods contends the FEHC erred in relying on non-precedential administrative opinions for its decision. This claim is patently unmeritorious " ((2004) 121 Cal.App.4th 1578)*

## VIOLATION OF DUE PROCESS
## 14th Amendment 42 USC (§§ 1983 )
## ULTRA VIRES DOCTRINE II

G.   THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS;

Plaintiff Request that the Court institute an Order and Demand the Payments in the original amount of $933.00 ( the difference thereof (**Exhibit L** *and* **Exhibit M**)) per the original request and was  submitted on May 20, 2014 directly to the office of Honorable Judge Truager  of  The United States District Court for The Middle District of Tennessee  at Nashville for a Subpoena barring The Department of Social Security from reducing Plaintiff's income, as Plaintiff was  NOT  a legal resident ( 6 months as allowed by Social Security Administration ) of Nashville  for which, a determination was returned Mooting the Subpoena June 10, 2014  ( **Exhibit E** ). Plaintiff, submitted a Notice of Appeal the same issues and was accepted by the Clerk of the Court. In the interim of the courts' decision, Plaintiff would submit a Writ of Certiaori in December of the same month. Plaintiff request that court include the last request date of   via email to the Dept. of Social Security Administration and Commissioner thereof Office and it's Open Office email May 10, 2016.

DEFINITION OF  STATUS QUA   *Appellants Court's Power Not Limited.  This rules does not limit the power of the appellate court or one of it's judges or justices;   one to stay proceedings, or suspend modify, restore, or grant an injunction while an appeal is pending, or two    to issue an order to preserve the status quo or the effectiveness of the judgment to be entered.*

DOCTRINE OF TOLLING__" *It is true that tolling doctrines can extend the time to sue well beyond the period of limitations-but not to a century and more beyond" " continuing violation"    Deadria Farmer-Paellmann, et al.,  v United States  Timothy Hurdle, et al.  Nos. 05-3265, 05-3266, 05-3305. 7th Cir. 2006*

CONTINUING VIOLATION  *O'Connor v. City of Newark (citing Morgan, 536 U.S. at 105) " On the other hand, under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing Morgan, 536 U.S. at 105) (explaining courts may consider the "entire scope of a hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period"). Accordingly, to allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period. See Morgan, 536 U.S. at 122; see also West v. Phila. Elec. Co., (explaining plaintiff must show that at least one act occurred within the filing period and that*

*the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination"). West v. Phila. Elec. Co., 45 F.3d 744, 754–55 (3d Cir. 1995)  See Also Rush v. Scott Specialty Gases, Inc., 113 F.3d 476 (3d Cir. 1997) and West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995), contained dicta explaining that the Fifth Circuit Court of Appeals considered the (i) subject matter ("whether the violations constitute the same type of discrimination"), (ii) frequency, and (iii) degree of permanence ("whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate") of the underlying acts"*

*Here, citing West, the District Court applied the Berry factors and determined that Plaintiff's claims met the subject matter and frequency requirements but failed the permanency requirement. The District Court reached this conclusion on the basis that Plaintiff should have been aware of the need to assert her rights but "did not pursue her claim with reasonable diligence, and thus she is precluded from using the continuing violation theory." In reversing the District Court, the Third Circuit held that, following Morgan, permanency is not required to establish a continuing violation, reiterating: It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days 'after' the single unlawful practice 'occurred.' Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment. Morgan, 536 U.S. at 117–18.*

H.     THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS; Employees, in their acts effectuated an Obstruction of The Administration of Justice by " Brushing Aside " " Deceptively Misfiling " or "Destroying or Concealing" the documents sent and received;  by that said office, thinking that problem would just go away" Neither were the documents " Returned " to the Plaintiff. The files, as I requested to view and acknowledge the receipt – "*were silent*"  I was told that they weren't in the files or noted in the computer system. The very same files enclosed and sent, not once, but twice; The Reconsideration Process and for request for an appointment for an Administrative Hearing before an Administrative Law Judge.

Obstruction of The Administration of Due Justice     *"The statute provide; he or she knowingly commits any of the following acts  (1) Destroys, alters, conceals, or disguise physical evidence, plants false evidence or furnishes false information  720 IICS  5/31-4(a)(1) (West 2012)" "    CATCH-ALL  PROVISION requires a Nexus in Time, Causation or Logic between the act and a Judicial Proceeding as well as Specific Intent to Interfere with actual Judicial Proceedings  "( United States v Gano 343  F 3d 578)*

I.     THE LIKELIHOOD THAT THE PLAINTIFF WILL SUCCEED ON THE MERITS; The chain of Custody of these  same documents enclosed with the proper application via carbon copy for both and sent through United States Postal Service;  whereas, signature was attached upon the receipt of the packet of information at the correct address has been established concretely.

PROVIDES THAT "LOSS" ORDINARILY MEANS THE MARKET VALUE OF THE PROPERTY STOLEN. HOWEVER, "[W]HERE THE MARKET VALUE IS DIFFICULT TO ASCERTAIN OR INADEQUATE TO MEASURE HARM TO THE VICTIM, THE COURT MAY MEASURE LOSS IN SOME OTHER WAY, SUCH AS REASONABLE REPLACEMENT COST TO THE VICTIM." *Id.* *The government estimated that the replacement cost of the documents Berkowitz stole would be more than $100,000. The government based its estimate on the effort it would take to duplicate the missing documents, including the time at least a dozen banks would have to spend duplicating documents, and the time the government would have to spend reorganizing the documents, re-interviewing witnesses, obtaining new copies of documents the witnesses had previously supplied, and recopying stolen undercover tape recordings.* TIME IS MONEY, AND THE VALUE OF THE LABOR INVOLVED IN REPLACING THE STOLEN DOCUMENTS IS PART OF THE COST OF REPLACING THEM.

"MOREOVER, TIME A PERSON SPENDS DOING ONE THING IS TIME THAT PERSON CANNOT SPEND DOING SOMETHING ELSE; THEREFORE, OPPORTUNITY COSTS MUST ALSO BE FACTORED INTO THE COST OF REPLACING THE DOCUMENTS. "[L]OSS NEED NOT BE DETERMINED WITH PRECISION, AND MAY BE INFERRED FROM ANY REASONABLY RELIABLE INFORMATION AVAILABLE...." *Guideline Sec. 2B1.1, Application Note 3. Given that Berkowitz produced no evidence to challenge the government's assertions about replacing the documents, those assertions were sufficient to support the trial judge's finding that the loss exceeded $100.00"* UNITED STATES of America   v. BERKOWITZ   927 F 2d 1376 (7th Circuit)1991

J.    Though Obstruction is profound, and carries greater weight for those employees whom, apparently do not respect the rights of the clients, greater so, The Law of The Land either by Subpoena or by that instituted by the Legislature, to which they are bond to serve – At the Very Least, the Claimant established, convergence of the documents sent to the Office for the purpose of a Quasi-Proceeding, but legal proceeding request and the convergence of such documents for whatever purpose they saw fit and in doing so, took away the plaintiffs right to a fair hearing; Due Process Administrative and Substantive.

K.    The Plaintiff believes, had she been given the opportunity to appear before an Administrative Law Judge with her evidence, In his or her vast experience, Plaintiff believes the Clearly Marked Documents of evidence, attached to the Requests  the Judge would have saw the value thereof.   A Temporary visit to Nashville; based upon the Request of the Subpoena alone, would have prevailed on the issues of the change in income; reversing the income to it's original status, based upon the temporary visit,  solely for the purpose of filing suit in the Federal Court holding jurisdiction to that suit.

" *United States Attorney's ( USA) office in Chicago, and in June 1988 established a procedure to allow the defendants in the tax fraud case to inspect, examine, and photocopy those documents that were discoverable to prepare for trial. Boxes that were available for immediate inspection were marked with a "Y" or the word "Yes."* UNITED STATES *of* America   v. BERKOWITZ   927 F.2d 1376   ((1990 ))(Thomas M. Durkin, William V. Gallo, Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill Before COFFEY, RIPPLE, and MANION, Circuit Judges))

L.      Plaintiff had never been to Nashville, Tennessee prior to placing the bid in an auctioned land. Prior to the bid and the failure of acceptance of that bid, had never wanted to reside in Tennessee. The only consideration to reside in Tennessee was based soley upon the property ownership. Plaintiff, outside of that Bid on the property – property that would rid of her of her homelessness, Never would have considered residing in Nashville, Tennessee, thus she had no intentions on residing there permanently – OUTSIDE of FILING the Case.

M.      Very simply put, it was a case about curing homelessness. The Plaintiff in the case before this court, wasn't given the opportunity to secure a Second Opinion, nor the Opportunity for a Fair Hearing. Neither was the issues present to Social Security Administrative employee taken Seriously.

CHAIN OF CUSTODY *In my special concurring opinion in White, I directed Judge Whitney's attention to Cleary's Handbook of Illinois Evidence, specifically section 901.2 dealing with chain of custody and section 902.2 dealing with certified copies of public records and the numerous cases therein cited. Cleary and Graham, Handbook of Illinois Evidence secs. 901.2, 902.2 (3rd ed. 1979). See also Drayton v. United States citing Escobedo v. Illinois " " Drayton v. United States,. 205 F. 2d 35 (5th Cir. 1953). 18. Escobedo v. Illinois,. 378 U.S. 454 (1964)*

*People v Furby " We agree with the observation of the dissenting justice below that the appellate court majority effectively imposed on the prosecution the unnecessary burden of establishing a chain of custody for the money Lawson had in his office desk the afternoon preceding the theft. (181 Ill.App.3d at 883, 130 Ill. Dec. 804, 537 N.E.2d 1133 (Lindberg, J., dissenting).) As applied in this State, the corpus delicti rule requires only that the evidence apart from the defendant's confession tend to show that a crime was committed; the independent evidence need not establish the crime beyond a reasonable doubt. (People v. Willingham (1982), 89 Ill. 2d 352, 362, 59 Ill. Dec. 917, 432 N.E.2d 861; People v. Perfecto (1962), 26 Ill. 2d 228, 229, 186 N.E.2d 258.) People v Furby 138 Ill 2d 434, 150 Ill Dec.534 (1990) see also United States of America, v. Lacey Lee Koenig and Lee Graf, "Under the continuous control approach, a parcel that is the subject of a controlled delivery like the one before us may be searched without a warrant after delivery if the parcel remains in continuous possession of the government, without "any substantial break in the chain of custody." McConnell, 595 P.2d at 153-55." "The continuous control test requires that a court rigorously apply a multifactoral analysis, wherein the government must satisfy each subtest or risk suppression of the evidence in question. See McConnell, 595 P.2d at 154-55 (five-part McConnell test, applied by the district court in this case). Andreas, on the other hand, takes a broader focus, asking whether, under a totality of the circumstances test, the controlled delivery at issue sufficiently secured the contents of the package. Andreas, 463 U.S. at 772-73, 103 S. Ct. at 3324-25. " United States of America, v. Lacey Lee Koenig and Lee Graf, 856 F.2d 843 (7th Cir. 1988)*

*"According to the indictment, Berkowitz stole the documents from the United States Attorney's Office WHILE CONDUCTING DISCOVERY" " Berkowitz obstructed justice, in violation of 18 U.S.C. § 1503, by STEALING THE DOCUMENTS. Count II charged Berkowitz with further obstructing justice, in violation of 18 U.S.C. § 1503, by DESTROYING SOME OF THE DOCUMENTS. Count III charged Berkowitz with STEALING PROPERTY OF THE UNITED STATES in violation of 18 U.S.C. § 641. " A grand jury indicted Berkowitz, charging him with two counts of obstruction of justice, 18 U.S.C. Sec. 1503, and one count of stealing government property, 18 U.S.C. Sec. 641" U.S. v Berkowitz 712 F. Supp. 707 (1989)*

4.  Most Importantly, as in the case of Berkowitz, Defendants; Dept. of Social Security Administration, the Commissioner thereof, and it's employees action sought to deter a hearing before a leading authority and in doing so, cause the Plaintiff harm, far beyond

their individual acts. Almost one year later the issue set forth, still exists. Yet All Request to resolve the problem, Department of Social Security Administration, It's Commissioner thereof, and all associated employees have washed their hands of the entire subject matter, just as they Squashed the Subpoena, without cause and without serious consideration for any adverse affects on the client they are hired to serve.

## ULTRA VIRES DOCTRINE III
## VIOLATION OF DUE PROCESS
## CONVERSION

*""The gravamen of the underlying complaint ........ property was removed .... without the consent of the owner        "  " converted the property." "... there were still no facts suggesting that the conversion was an "accident." The record is silent as to Southwest Design's involvement in the conversion.   " COLLINS V AMERICAN EMPIRE INSURANCE (1994) 21 Cal.App.4th 787*

*Collins v American Empire Insurance quotes an Illinois case "Red Ball Leasing v. Hartford Acc. & Indem. Co. (applying Indiana law), in which a leasing company repossessed a vehicle on the mistaken belief that the lessee had missed several payments. The lessor was sued for conversion and tendered its defense to Hartford. Interpreting policy language identical to American Empire's, **THE COURT HELD THAT THE CONVERSION CLAIMS DID NOT ARISE FROM AN "ACCIDENT" OR "OCCURRENCE" BECAUSE THE INSURED OBVIOUSLY INTENDED TO REPOSSESS THE VEHICLE.** (Id., at p. 311.) Even if its decision to take the truck was based upon erroneous information, the act of repossession was not "accidental": "A volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act .... [T]he latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident." (Ibid.)   Red Ball Leasing v. Hartford Acc. & Indem. Co. (7th Cir. 1990) 915 F.2d 306*

*"The Court: Well, **CONVERSION IS AN INTENTIONAL TORT IN THAT IT REQUIRES THE INTENTIONAL ACT OF TAKING POSSESSION OF THE GOODS OF SOMEBODY ELSE,** but it does not require, as I understand it, **THE INTENTION TO PERMANENTLY DEPRIVE THE OTHER PERSON OF THE GOODS. IT DOES NOT REQUIRE THE INTENTION NOT TO RETURN THE GOODS.** It does not require the intention to appropriate or permanently deprive the owner of the goods" COLLINS V AMERICAN EMPIRE INSURANCE (1994) 21 Cal.App.4th 787*

*See Christopher, 142 F.3d at 53. The court in Christopher went on to hold that the fraud statutes do not require "that the person deceived be the same person deprived of the money or property by the fraud," and that where it is "the role of a government regulator * * * to protect the monetary interests of others, a scheme to mislead the regulator in order to get at the protected funds will effect 'property rights.'" Id . at 54.[5] United States v. Christopher, 142 F.3d 46, 54 (1st Cir.), cert. denied, 525 U.S. 1054 (1998);see also State v. Saavedra " The defendant employee ..... was a public-sector employee who took highly confidential original documents .....belonging to her employer " State v. Saavedra, Docket No. A-1449-12T4 (Dec. 24, 2013)*

*2. The Trial Court Improperly Held That "Loss Of Use" of Property Is the Same as "Loss" of Property [18a] Despite the overwhelming weight of cases from other states holding that "conversion" is not "property damage," the trial court found that "conversion" constitutes "loss of use" of property, and thus falls within the second prong of the "property damage" definition. fn. 5   The court ruled as follows: "The policy ... covers the loss of use of tangible property which has not been injured or destroyed if such loss of use is caused by an 'occurrence.' As the loss was accidental and not intentional, it was caused by an 'occurrence' as the term is defined in the policy. AESL further argues that the 'loss of use' as that term is used in the policy, means Temporary loss of use only. AESL admits however that the phrase 'loss of use' is not defined [21 Cal. App. 4th 818]*

*in the policy and that when used in the policy it is not modified by the adjective 'temporary.' There is nothing in the policy that indicates that coverage is to be restricted to temporary, as opposed to permanent loss of use."*

*Contrary to the trial court's impression, American never argued that the policy only* **COVERED TEMPORARY LOSS OF USE AS OPPOSED TO PERMANENT LOSS OF USE.** *American argued instead that (1) "loss of use" refers to the rental or income value of property which has been damaged or rendered unusable; and (2) the Collins did not seek damages for "loss of use" of their property but for the value of the property itself.*

**"Loss of use" of property is different from "loss" of property. To take a simple example, assume that an automobile is stolen from its owner. The value of the "loss of use"** *of the car is the rental value of a substitute vehicle;* **the value of the "loss" of the car is its replacement cost.** *[19, 18b] The nature of "loss of use" damages is described in California Jurisprudence Third as:* **"The measure of damages for the loss of use of personal property may be determined with reference to the rental value of similar property which the plaintiff can hire for use during the period when he is deprived of the use of his own property."** *(23 Cal.Jur.3d, Damages, § 69, pp. 129-130, italics added.) " COLLINS V AMERICAN EMPIRE INSURANCE (1994) 21 Cal.App.4th 787*

N.    THE LIKELIHOOD OF SUCCESS ON MERIT, the following statement on Motion to Strike Southwest's Cross complaint from Collin  v American Empire Insurance in the courts upper level consideration of the case. More importantly and as presented by The United States Attorney Generals Office of Illinois in the case of B

*"Collins moved to strike Southwest Design's answer to the cross-complaint because Southwest Design had willfully refused to respond to discovery – " THE SUPERIOR COURT GRANTED THE MOTION " " " The November 2, 1988, minute order provided: "The motion to strike is granted. Cross-defendant [Southwest Design] has demonstrated that it will not comply with this court's orders and accordingly this court is left with no alternative but to strike the answer to the cross-complaint and to enter a default judgment on the cross-complaint as against the cross-defendant, Southwest Design."* "COLLINS V AMERICAN EMPIRE INSURANCE (1994) 21 Cal.App.4th 787

5. The Plaintiff of record, lays out a complaint which falls underneath the shelter of  The Tucker Act, and refers to the " power designated by the United States District Court and The Federal Court " but does not mention " THE TUCKER ACT " by name, but we note, neither can exist WITHOUT The Federal Tort Claims Act 28 USC  2671-2680 which is referred to.  However, Plaintiff hopes that the court, will allow the Pleadings as a whole because Both The Tucker Act and The Administrative Procedure Act fall beneath The Federal Tort Claims Act  ( FTCA) which becomes clear in the statement made by the Supreme Court:

" *The Act(Federal Torts Claims Act) " imposes certain procedural prerequisites to filing a suit in The District Court. One; Before Filing, the plaintiff, file an Administrative Claims to the Appropriate Federal Agency within TWO YEARS after the Claims accrues" "*

*" Under the Federal Torts Claims Act, the Federal District Courts may entertain Tort Claims for damages against The United States based upon the actions of government employees in cases in which The United States has not abrogated it's Sovereign Immunity under The Tucker Act. Apply only to case which a private person would be held liable "*

6. The Tucker Act, on the other hand allows the court of Federal Claims to render judgment upon any claim against the United States founded… upon…. Any regulation of an Executive Department. Though Plaintiff admits, the two would better be left to the hand of this court; The United States District Court of Illinois based upon the intermingled complaint, as it borders both the Tucker Act and the Administrative Procedure Act.

Katz argues that *" HUD regulations, and is based on the project owners costs of acq2uiring , owning, managing and maintaining the rehabilitated units. Hollywood Associations challenged HUD's interpretation of the regulations governing the calculation of contract rents. It asserted that the up-front costs incurred to obtain lower base rate should be factored in to produce an effective interest rate of 11.28% Id. Sec. 882.408 while the project owner is responsible for obtaining the necessary financing to carry out these functions, he may include the monthly amortization cost of such financing in the calculation of the contract rent. Id Sec. 882.408…. "* Following the execution of either the AHAP or the HAP contract, the Public Housing Agencies or PHA is entitled to adjust the amount of contract rent for specified reasons" Katz v Cisneros ( 16 F3d 1204(1994)) *see also* Leclair Courts Resident Management v Chicago Housing Authority Pl.Resp.Mot.Sum.J. at 4 (emphasis omitted). RMC cites Wright v. City of Roanoke Redevelopment and Housing Authority, <u>479 U.S. 418</u>, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) and Katz v. Cisneros, <u>16 F.3d 1204</u>, 1207 (Fed.Cir.1994) *" in support of its position"*

*" The plaintiff has the Burden to Show Jurisdiction, to meet that burden he offers only the APA and pleads a Federal Questions "* Katz v Cisneros ( 16 F3d 1204(1994)) *see also* Leclair Courts Resident Management v Chicago Housing Authority Pl.Resp.Mot.Sum.J. at 4 (emphasis omitted). RMC cites Wright v. City of Roanoke Redevelopment and Housing Authority, <u>479 U.S. 418</u>, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) and Katz v. Cisneros, <u>16 F.3d 1204</u>, 1207 (Fed.Cir.1994) *" in support of its position"*

*" At the Preliminary stage of litigation however, this court must accept the plaintiff's pleading at face value. ""* The Pleadings however, charge breach of contract; and Name the Government's Agent as Defendant *"* Katz v Cisneros ( 16 F3d 1204(1994))

*" APA provides a right of review in District Court – Only where there is NO OTHER adequate Remedy. Thus the Plaintiff must show that The Court of Federal Claims could not provide adequate compensation [Money damages…. Will make the Plaintiff whole ] " " Moreover, section 702, this court's basis for a statutory waiver- DOES NOT provide relief " IF" any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought "* Katz v Cisneros ( 16 F3d 1204(1994))

*" In no event, however, does the APA offer Mr. Katz access to a Federal Court ""Actions not dismissed under 5 USC ss 702 are those stating a claim that an agency or an officer or employee acted improperly " " Agency means "Authority of the Government of The United States " HUD'S actions as a REGULATOR "* Katz v Cisneros ( 16 F3d 1204(1994))

*" The Congress had enacted a " Partial Waiver " of The Sovereign Immunity Defense as to Judicial Review under The Administrative Procedure Act ( 5 USC 701 et seq.) was amended to provide that ( an action in a Court of The United States seeking relief other than money damages; ) stating a claim that an agency or an officer or employee thereof, acted or failed to act in an official capacity or under the color of his legal authority " Shall Not Be Dismissed ""* Katz v Cisneros ( 16 F3d 1204(1994))

" *5 USC 703 in addition, has been amended to allow suits to be brought against The United States or any of it's agencies or officers* " Katz v Cisneros ( 16 F3d 1204(1994))

" *The court asserts that Plaintiff's action is beyond the Purview of The Tucker Act because the express contract is between Hollywood Associates and Housing Allowance NOT between Hollywood Association and The United States* " Katz v Cisneros ( 16 F3d 1204(1994))

" *The Tucker Act on the other allows Federal Claims to Render judgment upon any claim against The United States founded... upon... any Regulation of an Executive Department* "" *IF Mr. Katz really seeks relief under Regulatory policies – alternatively The Tucker Act permits suits founded upon any expressed or Implied contract with the Government of the United States- Compensable by money under Regulation or Contracts, The Tucker Act dictates the Forum* " Katz v Cisneros ( 16 F3d 1204(1994))

" *Hollywood Associates seeks payments to which it alleges it is entitled pursuant to Federal Statute and regulation.......* " " *It wants to compel HUD to perform the calculation of ([ contract rents ]) in accordance with 24 SCR sec 882.408 and other applicable regulations. That the payment of money may flow from a decision that HUD has erroneously interpreted or applied* " Katz v Cisneros ( 16 F3d 1204(1994))

7. In the case before this court, The United States District Court of Illinois, the plaintiff, in the expressed words of Katz v Cisneros Seeks both the losses of " *Payment entitle it pursuant to Federal Statute and Regulation* " inconjunction to " *compensation for a loss suffered* "

" *This court perceives that the instant case is not a contract case, the complaint, however, lists, six counts all of which invoke contractual relief. Count I seeks to Madamus the Department of Housing and Urban Development to pay the contract rents in the Housing Assistance payment Contract. Count III asserts a breach of duty to follow the Housing Assistance Payments Contract. Count IV asserts breach of (that contact) HAP Contract. Count V a alleges a breach of contract in which the plaintiff is a third party beneficiary. Count VI asserts a breach of contract implied in law. Each count seeks relief for breach of contractual duties . Clearly, these six counts delineate a contract action. The complaint asks only enforcement of the contract or damages for breach THIS CONTRACT FALL SQUARLY WITHIN THE BOUNDS OF THE TUCKER ACT* " Katz v Cisneros ( 16 F3d 1204(1994))

8. At times, the Plaintiff, unknowingly referred to Preliminary Injunction, the TRO and the Emergency Expedited Injunction mistakenly, as though interchangeably or as ONE, when in fact, each are different.

" *Although the undersigned recognizes that Pro Se pleadings are to be held to a less stringent standards than formal pleadings drafted by lawyers*" ( Haines v Kerner 404 U.S. 519; 520-531 (1972)) " *.... Our duty to be less stringent with Pro Se complaints, dose not require us to conjure up unpled allegations* " (McDonald v Hall 610 F 2d 16, 19 (1st Circuit (1979)))

9. In the case of Johnny Gant v State of Tennessee and several other agencies thereof Judge Trauger states the following in her Report and Recommendation " *does not suggest what actions or inactions these entities might have taken that violated his rights or*

*caused him injury.  The claims  against these defendants  are subject to dismissal  "* Here in

this case before this court,    The United States District Court of Illinois,  The plaintiff;

Sharon M. Parson ( Crusoe) has successfully named such acts that " *implicate FTCA  "*

*as required by 28 USC ss 2671-2880 and 1436 "*  ( Gant  v State of Tennessee; Metropolitan

Development Housing Agency).

" *Because the complaint was filed in Forma Pauperis  the first order of Business is to conduct an initial review of the Complaint. An initial review of the Complaint as required by  28  USC ss 636  and ( rules of Federal Rules of Civil Procedure)  28 USC ss 1915(e)(2).  In conducting this review the court is to IDENTIFY ANY COGNIZABLE CLAIMS AND DISMISS THE COMPLAINT, OR ANY PORTION thereof, PRIOR TO THE SERVICE ON THE DEFENDANTS, to the extent if it is Frivolous, or Malicious, Fails to State a Claim for which relief may be granted  or seek Monetary Relief from a defendant  who is Immunned from such relief…… In applying these standards  " " The Complaint itself is largely incoherent, but the courts' understanding of the plaintiff allegations is bolstered by the exhibits submitted with the motion " " In applying these standards,  I find the complaint states Potentially Viable Claims and that these claims should be permitted, at this stage, to proceed  "  ( Gant v State of Tennessee; Metropolitan Development Housing Agency )*

10. The Plaintiff offers in support of her beliefs and considerations when filing the

Pleading, Trailing Papers and Evidence the following as recited in the case of Collins v Empire

Insurance states the following in it's quote of  Juchert and California Shoppers Inc.

" *Evidence Code section 600, subdivision (b) defines an "inference" as "a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." It is fundamental that one cannot make an inference from thin air: "Where there is no evidence or not even slight evidence of an essential fact to be proved by the plaintiff, a conclusion of a trial court or jury based thereon becomes a mere conjecture and does not rise to the dignity of an inference." (Juchert v. California Water Service Co. (1940) 16 Cal. 2d 500, 506 [106 P.2d 886].) The absence of critical evidence does not give rise to an inference that the missing evidence exists; rather, it indicates a failure of proof: "If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary." (California Shoppers, Inc. v. Royal Globe Ins. Co. (1985) 175 Cal. App. 3d 1, 45 [221 Cal. Rptr. 171].) A judgment cannot be based on guesses or conjectures. (Ibid.) [11b]*
"

11. In the trailing,  pleadings, papers and evidence presented to this court by the Plaintiff,

Sharon M. Parson ( Crusoe ),  This court,  The United States District Court of Illinois, did serve

upon the Defendants as listed in this title (1 ) The Expedited Emergency  Injunction or the

Temporary Restraining Order  (TRO) and at a later date, served upon the Defendants (2) Motion

for Default Judgment.

4.   THE PUBLIC INTEREST.

PUBLIC PRESSURE

*La Appearance Merit Meme*

A. PLAINTIFF SUFFERED A MANISTEST INJURY THESE CHANGES, WERE MADE AT THE APPEAL STAGE OF THE SUIT AND YET ANOTHER SET OF SERVICES; AT THE WRIT OF CERTIOARI STAGE AND YET ANOTHER SET OF SERVICES - It can be inferred that some interference with the filing of the Appeal of the lawsuit and the Writ of Appeal to the Supreme Court Correlate within days of each reduction of income from Social Security Administration and Commissioner thereof, constructively reducing my ability to bring suit.

B. PLAINTIFF HAS SUFFERED A MANISTEST INJURY by having to live in a homeless during the initial application process due to the reduction of income – HAVING TO MAKE THE CHOICE OF CONTINUING A CASE OR OF LIVING OUT OF A HOMELESS SHELTER. PACIFIC GARDEN MISSION IN CHICAGO, ILLINOIS IS PROOF OF THIS DECISION WHEN managing staff members of the Christian Shelter stated " *you have to make a choice, either the papers you claim or your clothing* " AT ALL TIMES, STAFF MEMBERS, LIKE SOCIAL SECURITY, WERE FULLY AWARE OF THE IMPORTANCE OF THE DOCUMENTS SECURED WITHIN MY PERSONAL ITEMS ( LUGGAGE ).

C. PLAINTIFF WILL CONTINUE TO SUFFER A MANISTEST INJURY- GIVEN MY HISTORY OF MENTAL STRUGGLE it could also be effectively deemed I was schizophrenic, though I attended college and secured, in many instances, more than average grades - thus, the case was more or less a part of my so called delusional episodes.

D. It would appear that when I had impressed upon the judge [Honorable Judge Trauger] that I could carry this case in making an appeal, a public interest may have been had in the interest to a *SO Called,* Mentally Disabled individual's ability to be so resourceful – for which I have been fighting to remove this title case upon DSM III [ American Psychological Association Cataloged Diagnosis and Treatment ] so gallantly places me into This is in and around the time, The Department of Social Security changed my status to SSID ( I believe ) to SSI without notice and without regard for my health and well being.

E. Yet another change; Drop in income as allotted by Department of Social Security in Chicago, Illinois without notification, ability to fight any act they deemed necessary just,

coincidentally around the time I filed CORRECTIONS with The United States Supreme Court; A Writ of Certioari which became lost! Coincidentally.

## The Rehabilitation Act
## Title IV

*"Under the ADA, it is illegal to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."* (42 U.S.C. § 12112(a).)

*A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." (Id., § 12111(8).) A "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." (Id., § 12102(2)(A).) A mental impairment can constitute a disability within the meaning of the ADA. (Ibid.)*

*" Discrimination under the ADA can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee...."* (Id., 12112(b)(5)(A).)

*"The FEHA likewise prohibits discrimination because of mental disability (Gov. Code, § 12940, subd. (a)) and requires employers to make reasonable accommodations to known disabilities, unless the accommodation would produce undue hardship" (id., subd. (k)).* (Prilliman v. United Air Lines, Inc.(1997) 53 Cal. App. 4th 935, 948 [62 Cal. Rptr. 2d 142]; County of Fresno v. Fair Employment & Housing Com. (1991) 226 Cal. App. 3d 1541, 1553 [277 Cal. Rptr. 557].)

*The [FHA] protects a person with a mental disability to the same degree it protects a person with a physical disability (* Auburnwood v FEHA Id at pg 13 )

*" We review claims brought under the Rehabilitation Act as we would claims brought under the Americans with Disabilities Act of 1990. See Brenneman v. MedCentral Health Sys., 366 F.3d 412, 418 (6th Cir.2004)."*

*"To make a case for discrimination under Section C of the ADA a plaintiff must show that; (1) the employer mistakenly believed that the applicants had an impairment that substantially limited a major life activity, or (2) the employer mistakenly believed that an actual, non-limiting impairment substantially limits a major life activity. Id. at 2149-50. In this case, the EEOC argues the first of these prongs. Plaintiff contends that Woodbridge mistakenly believed that the applicants were substantially limited in the major life activity of working because Woodbridge mistakenly believed that the applicants either had CTS or were at increased risks of developing it "* (EEOC v WOODBRIDGE CORP. 124 F Supp 2d 1132 (2000) citing Sutton v. United Airlines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999))

*"Doe responded that he could not work on Fridays because, "[he] had to see [his] doctor, and . . . pick up [his] medicine." Snider asked Doe "what kind of medication" he took, and Doe responded, "psychotropic medicine." According to Doe, at that point, Snider "stopped the interview and said that his insurance would not cover me." Doe offered to obtain a letter from his doctor, but Snider refused to reconsider. Snider testified that he ended the interview saying, "[w]hat I'll have to do is have this checked out," meaning apparently, that he wanted to determine whether the ARC's insurance policy would cover a driver using psychotropic medication. However, Snider never pursued an investigation into the insurance coverage and later hired nine other drivers"* ( The Salvation Army, et al. 531 F.3d 355  citing  Doe v. The Salvation Army, et al. No. 07-3822

*Doe claims that when he was being interviewed for a job with the Salvation Army, the interviewer asked him about his medications. When Doe acknowledged that he took psychotropic medications, he was rejected for the job, in violation, he alleges, of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794(a), and Ohio Rev.Code Ann. § 4112.02. " sometime in May 2005, DeGraw contacted Charles Snider, the supervisor of the Salvation Army's Adult Rehabilitation Center (ARC) warehouse and arranged for Doe to be interviewed for a truck driver position with the Salvation Army" " <u>VIEWING THE EVIDENCE SUBMITTED IN THE LIGHT MOST FAVORABLE TO DOE... [PLAINTIFF]</u>, we think a genuine issue of material fact exists as to whether the Salvation Army's decision not to hire Doe was based solely on his disability  "* ( The Salvation Army, et al. 531 F.3d 355 )

" There was no evidence that Dowd was given any time to attempt to salvage, it's long standing business relationship, if given the opportunity David may have been able to Salvage it's long standing business relationship." 287 Ill App 3d. 354, 365 ( 679 NE 2d 74 (1997))  "The City argues that the acts of it's employees cannot bind it or provide the *basis for Estoppel  unless the employee had authority to modify* ...... " Neilsen-Massey Vanillas 276 Ill App 3d at 155-56

" In our case, the City has not suggested that the contract with Patrick was ultra vires.  However, it does argue that, just as with an ultra vires contract, a contract modification that did not follow the prescribed procedure is void and is not subject to an assertion of equitable estoppel. In Stahelin, this court addressed exactly this argument. After a lengthy review of the case law we ultimately rejected the argument, explaining that the law distinguishes     between two different situations involving municipal contracts and the application of    equitable esstoppel:

"Contracts entered into by a municipality which are expressly prohibited by law, and which under no circumstances can be entered into, are void and ultra vires. They may not  be rendered valid thereafter by estoppel or ratification on the part of the municipality.

However, there is another class of municipal contracts, distinct from the void type heretofore referred to, wherein the municipality has the power to enter into the contract, but where a portion thereof may be beyond its power, or its power may have been irregularly exercised. As to this class of contracts, a municipality may not assert its want of authority or power, or the irregular exercise thereof, where to do so would give it an unconscionable advantage over the other party. Municipal corporations, as well as private corporations and individuals, are bound by principles of common honesty and fair dealing." (Stahelin, 87 Ill. App. 2d at 41-42 (citing McGovern v. City of Chicago,  (281 Ill. 264, 283 (1917), and People ex rel. Stead v. Spring Lake Drainage & Levee District, 253 Ill. 479, 500 (1912)).

F.    PLAINTIFF HAS SUFFERED A MANISTEST INJURY, ONCE MORE, ALMOST SIMULTANEOUSLY, Plaintiff has received, little inquiry an No Sales of products offer through websites which The United States Department of Justice has a right to *freeze* given my Homeless Status .

## **AS OFFERED IN MOTION FOR**
## **DEFAULT JUDGMENT**
## **RULE 55**

*(a) Entering a Default Judgment. When a party against who a judgment for affirmative relief is sought has failed to plead, or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default. (b) Entering a Default Judgment  (1)  By the Clerk,  if the Plaintiff's claim is for a sum certain  or a sum that can be made certain by computation,  the clerk, on the Plaintiff's request,  with an affidavit showing the amount due, Must Enter Judgment for that amount and costs  against a defendant  who has been defaulted for not appearing  and who is neither a minor nor an incompetent person.*

*It is Axiomatic that questions not raised in the Trial court are waived and may not be raised for the First time on Appeal   ( Shell Oil Co.  v Dept. of Revenue   95 Ill 2d 541, 550;  449  NE 2d 65  1983)*
*Plaintiff filed Default Judgment base upon defendants failure to answer complain or otherwise plead in accordance to Illinois Supreme Court Rule  18 (d)*

1.)  The Plaintiff came before this court on May 19, 2016 and filed a request for an Expedited Emergency

Injunction in *forma pauperis.*  Within the Expedited Emergency Injunction Request, Plaintiff requested

that Defendants be held accountable for their words, actions and non-actions.  In the fact that their actions

violated the 5th Amendment of the Constitution.  A Constitutional Rights as Guaranteed to Plaintiff, under

the Due Process Clause. Plaintiff further requested that defendants be restrained from destroying any more documents of which were attached and sent directly to the Office Of Social Security Administration, directly applicable to the request for a Reconsideration and that of the request to before an Administrative Law Judge. With the Plaintiff as in Pro Se capacity and with the approval of the *forma pauperis* application request Approved inconjunction to the approval of the Expedited Emergency Injunction, Notice was served upon the defendants on May 23, 2016 by and through the court with electronic notice mailed to all parties, the following email addresses as listed (USAILN.ECFSSAAUSA@usdoj.gov, Ch.ill.ogc.ndillinois@ssa.gov, kim.mcwilliams@usdoj.gov, ODAR.OAO.COURT.1@ssa.gov *and* healingmindseveryday@yahoo.com)

16.) Plaintiff now comes before this court and requests Motion for Default Judgment, based once more on the Defendants Actions and In actions the full amounts presented to this court in Plaintiff's Expedited Emergency Injunction [Exhibits J and Exhibits K] *$6,457.70*   Six Thousand, Four Hundred and fifty-seven dollars with Seventy cents.

" *A Default Judgment is correct under Rule 55 "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.*

*"Under the Ultra Vires doctrine complainant must show that such an act or acts, whereas, the source itself, legislative regulatory and or statute rather than unauthorized actor of a ministerial officer" THE EXCEPTION to Ultra Vires permits plaintiff to seek relief, against, an government actor- who allegedly has violated, Statutory or Constitutional provisions, by acting without legal authority or by failing to perform a purely Ministerial Act. To fall within the Ultra Vire Exception and to the Immunity, a suit must allege and ultimately prove, the officer acted without legal authority or failed to perform a purely, ministerial act.*

17.) Plaintiff requested, and should be allowed to collect in Treble Damages totaling *$19, 373.10* (Nineteen thousand, three hundred and seventy-three dollars and ten cents) willful and wanton acts and inactions of these employees of this agency and for their acts of Benign Injustice.

*Under the ADA, it is illegal to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (42 U.S.C. § 12112(a).)*

*A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." (Id., § 12111(8).) A "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such*

*individual." (**Id., § 12102(2)(A).**) A mental impairment can constitute a disability within the meaning of the ADA. (Ibid.)*

*" Discrimination under the ADA can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee...." (**Id., 12112(b)(5)(A).**)*

12. Plaintiff Prays that Request for all Judgments be granted and Judgment be ordered and preserved by written opinion

Sharon M. Parson ( Crusoe )
Temporary Address
c/o: The Franciscan House of Mary and Joseph
2715 West Harrison St.
Chicago, Illinois 60612
healingmindseveryday@yahoo.com
sharonparsonenterprises@gmail.com

DATED: July 08, 2016

Permanent Address:     Sharon M. Parson (Crusoe)
                        Hendaye Way-Hendaye Lane
                        (Deed Pending placement of Address: Parcel Lot 7 Block 3)
                        Hot Springs Village, Arkansas 71909